Constantin V. Roboostoff (SBN 69328)
cvr1@earthlink.net
Scott Kalkin (SBN 120791)
robokalk@earthlink.net
**ROBOOSTOFF & KALKIN**
Street Address: 369 Pine Street, Suite 820, San Francisco, CA 94104
Mailing Address: 80 Cabrillo Hwy N. Suite Q 645, Half Moon Bay, CA 94019
Telephone (415) 732-0282
Facsimile (415) 732-0287

Attorneys for Plaintiff Thomas McNeal

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS MCNEAL,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY,<br><br>　　　　　Defendant. | CASE NO.<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Breach of Contract<br>2. Breach of Covenant of<br>　 Good Faith and Fair Dealing |

## JURISDICTION

1.　　This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00, and is between citizens of different States.

## VENUE & PARTIES

2.　　Venue lies in the Northern District of California pursuant to 28 U.S.C. § 1391 (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district.

---

Complaint for Tortious Breach of Insurance Contract

1

3. At all relevant times, plaintiff Thomas McNeal ("Plaintiff") was enrolled in Group Variable Universal Life through his employment and was issued policy #0007937504 ("Policy") by Metropolitan Life Insurance Company ("MetLife"), a mutual company incorporated in New York State. This Policy includes a waiver of monthly deductions rider ("Rider") which outlines the provisions needed to be eligible for a review of the waiver of monthly deduction benefit ("waiver of monthly premium payments").

**FACTS**

4. The Rider in pertinent part provides that Plaintiff is entitled to a waiver of monthly premium payments under the Policy if he becomes totally disabled before age 65 and provides written proof that he is unable to perform with "reasonable continuity the substantial and material duties" of his job due to sickness or bodily injury.

5. All premiums due under the Policy have been paid and Plaintiff has performed all obligations under said Policy on Plaintiff's part to be performed.

6. Plaintiff is 60 years old and was born on February 19, 1965. He began working full-time at the County of Los Angeles Sheriff's Department as a Deputy Sheriff/ Captain on February 10, 1989.

7. Plaintiff has worked in the correctional system as a patrol officer, an investigator, and in August 2019, as a Captain in the training bureau. He trained cadets on defensive tactics, scenario techniques, physical education, and weapons training in six academy locations.

8. The physical requirements of Plaintiff's job as a Captain included prolonged sitting, driving, standing, walking on regular and uneven surfaces, and neck flexion. He did repetitive neck motions, bending, leaning forward, twisting and turning, ascending and descending stairs, stooping, squatting and kneeling, pushing and pulling, repetitive arm and hand movement, simple and forceful grasping, gripping, torque movement, and fine finger manipulation and operating foot controls. He would lift and carry up to 50 pounds. He worked

---

Complaint for Tortious Breach of Insurance Contract

1 | eight hours per day, five days per week.

2 |   9. Plaintiff was forced to stop working on March 20, 2021, because his medical
3 | condition which included impingement syndrome of right shoulder, acute and chronic lumbar
4 | radiculopathy, thoracic back pain and bilateral knee pain, precluded him from being able to
5 | perform with "reasonable continuity the substantial and material duties" of his job as a Captain.

6 |   10. Plaintiff filed his claim for waiver of monthly premium payments under the
7 | Policy with MetLife ("claim") on April 15, 2024.

8 |   11. Plaintiff was informed by an unsigned letter dated June 12, 2004, that his claim
9 | was denied based upon the opinion of MetLife's Appeals Medical Health Specialist Amanda
10 | Horlebein, BSN, RN, (hereinafter "Nurse Amanda") who conducted a medical record review on
11 | November 19, 2024, and determined that the clinical evidence did not support restrictions and
12 | limitations from March 19, 2021, ongoing and did not support restrictions and limitations as
13 | evidenced by lack of subjective and objective findings that demonstrate a physical deficit "that
14 | would preclude work."

15 |   12. Plaintiff filed his appeal on October 22, 2024, where he provided additional
16 | medical evidence and clarification of certain errors contained in his initial claim filing.

17 |   13. Plaintiff was informed by an unsigned letter dated February 24, 2025, that his
18 | appeal was denied based upon the opinion of Nurse Amanda who conducted a medical record
19 | review on January 22, 2025, and once again determined that the clinical evidence did not support
20 | continuous restrictions and limitations from March 19, 2021, continuously ongoing as evidenced
21 | by lack of findings that demonstrate a physical functional deficit that would "preclude work
22 | continuously from 3/19/21 ongoing."

23 |   The letter goes on to state that in making its decision, MetLife "relied upon the Plan
24 | documents" and upon the premise that "Total Disability" means "the complete inability of the
25 | insured to perform all of the substantial and material duties of his regular occupation."

26 |
27 | Complaint for Tortious Breach of Insurance Contract
28 |               3

14.     By way of an unsigned letter dated August 19, 2025, in response to a request to provide copies of all documents contained in the claim file upon which MetLife relied in making its decisions on the claim, MetLife stated that it "relies on the policy provisions and medical documentation on file when rendering a claim decision."

15.     By letter dated November 11, 2025, Plaintiff's counsel requested MetLife to reconsider its denial of Plaintiff's claim based upon the following information contained in the claim file:

(a)     MetLife failed to apply the definition of "total disability" as described in the Rider during the administration of Plaintiff's claim which provides that he is entitled to a waiver of monthly premium payments under the Policy if he provides written proof that he is unable to perform with "reasonable continuity the substantial and material duties" of his job due to sickness or bodily injury;

(b)     Plaintiff's medical history demonstrated that he underwent a T9-10 partial laminectomy on August 12, 2021, right shoulder arthroscopy with intra-articular synovectomy debridement, subacromial and subdeltoid bursectomy decompression acromioplasty with repair of the rotator cuff on October 22, 2021, a right shoulder open biceps tenodesis, rotator cuff repair, intra-articular synovectomy, subacromial and subdeltoid bursectomy, decompression acromioplasty and arthroscopic Mumford/distal clavicle resection of the right shoulder on January 5, 2024, an arthrodesis posterior technique at the thoracic spine T8-11, posterior spinal intrumentation with pedicle screw from T8-T11, laminotomy at the right T8-9 as well as a partial facetectomy and foraminotomy on November 18, 2024, a combination of a decompressive procedure followed by fusion at L4-L5 and L5-S1, on May 24, 2019, hardware was removed at L4-S1 and on November 6, 2023, Plaintiff underwent fusion at L3-4 and decompression at L2-4 as a result of a significant L3-4 breakdown with bulging disease and stenosis that had developed at this level;

Complaint for Tortious Breach of Insurance Contract

(c) Nurse Amanda engaged in "cherry picking" items from the clinical evidence to support her findings while ignoring other relevant evidence in the record. Although she noted the numerous surgeries plaintiff underwent, the steroid and PPR injections he endured which demonstrates the severity of his condition, the fact his treating physicians found him disabled from his job, and plaintiff's constant complaints of pain and physical limitations, she chose to give this evidence little if any weight and focused upon the fact plaintiff was put on light duty at one time and that he on occasion would have what was characterized as "normal" exams;

(d) Nurse Amanda based her analysis upon the erroneous assumption that in order for Plaintiff to be entitled to the waiver of monthly deduction benefit, the clinical evidence must demonstrate that he was unable to "work." The analysis should have focused on whether the clinical evidence supports restrictions and limitations which preclude Plaintiff from being able to perform with "reasonable continuity the substantial and material duties" of his job as a Captain, not whether they would preclude "work."

(e) MetLife totally ignored the fact that Plaintiff's medical condition has a significant impact upon his activities of daily living. In his personal profile report, Plaintiff points out that he has difficulty sleeping and would wake up frequently because of his pain and discomfort; has difficulty showering; is unable to sit, stand and walk for any length of time; is unable to do simple repairs around the house; is unable to participate in recreational activities; and needs assistance to shop, drive or carry luggage; and

(f) MetLife focused its analysis beginning as of March 19, 2021, rather than April 15, 2024, the date Plaintiff filed his claim.

16. By letter dated December 1, 2025, MetLife refused to reconsider its denial of Plaintiff's claim stating that the denial was not based on Nurse Amanda's opinion regarding Plaintiff's ability to work, but rather on her conclusion that the clinical evidence did not support ongoing restrictions or limitations from the reported disability date onward.

17. Plaintiff remains totally disabled and is entitled to benefits under the terms of the Policy.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

18. Plaintiff realleges and incorporates by reference each and every allegation of paragraphs 1 through 17 herein.

19. MetLife's refusal to grant Plaintiff's claim constitutes a material breach of the Policy.

20. MetLife has failed and refused, and continues to fail and refuse, to in good faith analyze and evaluate Plaintiff's claim. Said failure constitutes a material breach.

21. As a direct and proximate result of said breach, Plaintiff was injured and damaged in an the amount according to proof.

WHEREFORE, Plaintiff prays judgment against MetLife as hereinafter set forth.

**SECOND CAUSE OF ACTION**
**(Breach of Covenant of Good Faith and Fair Dealing)**

22. Plaintiff realleges and incorporates by reference each and every allegation of paragraphs 1 through 21 herein.

23. At all times herein relevant, MetLife agreed to act in good faith and deal fairly with Plaintiff when the Policy was sold and premiums accepted. MetLife thereby assumed a special relationship with, and quasi-fiduciary obligations to, Plaintiff and agreed to abide by its said duties. Nevertheless, MetLife refused and failed to act in good faith and deal fairly with Plaintiff, and breached its obligations, as is set forth more particularly below.

24. In the absence of a reasonable basis for doing so, and with full knowledge and/or conscious disregard of the consequences, MetLife refused, and continues to refuse, to grant Plaintiff's claim under the Policy and the laws of California as described above.

---

Complaint for Tortious Breach of Insurance Contract

25. MetLife engaged and continues to engage in a course of conduct to further its own economic interests and in violation of its contractual and fiduciary obligations to Plaintiff, including, but not limited to:

    a) Refusing to acknowledge that Plaintiff's claim for benefits under said Policy to be valid.

    b) Not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claim in which liability has become reasonably clear.

    c) Unreasonable and improper investigation of Plaintiff's claim.

    d) Unfair claims practices in handling the claim of Plaintiff.

    e) Compelling Plaintiff to institute litigation to recover benefits due under the Policy.

26. MetLife continues to engage in the aforementioned acts, and said conduct and bad faith constitutes a continuing tort and continuing bad faith toward Plaintiff, causing Plaintiff continuing damage as described herein beyond the date of the filing of this action.

27. As a direct and proximate result of the aforementioned wrongful conduct of MetLife, Plaintiff has suffered, and will continue to suffer in the future, damages under the terms of said Policy for a total amount as yet unascertained and to be determined according to proof at time of trial.

28. As a further, direct and proximate result of the aforementioned conduct of MetLife, Plaintiff has suffered mental and emotional distress, including, but not limited to, frustration and anxiety, and has thereby incurred general damages in a sum to be determined according to proof at time of trial.

29. As a further, direct and proximate result of the aforementioned conduct of MetLife, Plaintiff has been obliged to expend or incur liability for costs of suit, attorney's fees, and related expenses in an amount not yet fully ascertained, but which will be submitted at the time of trial.

---

Complaint for Tortious Breach of Insurance Contract

30. The conduct of MetLife as described herein was done willfully, oppressively, maliciously, with conscious disregard of the rights of Plaintiff, and with the intent to annoy, harass, or injure Plaintiff such that Plaintiff is entitled to a recovery of exemplary damages under CCP § 3294 in an amount appropriate to punish or set an example of MetLife.

WHEREFORE, Plaintiff prays for judgment against MetLife as follows:

1. Declare that MetLife violated the terms of the Policy and Plaintiff's rights thereunder by failing to grant Plaintiff's claim;
2. Order MetLife to institute the monthly premium waiver, restore coverage, and refund to Plaintiff all excess premiums paid by Plaintiff;
3. Award Plaintiff economic and consequential damages, in a sum to be determined according to proof at trial;
4. Award Plaintiff prejudgment interest on all damages requested herein;
5. Award Plaintiff reasonable attorneys' fees, witness fees and costs of litigation incurred by Plaintiff to obtain the Policy benefits in an amount to be determined according to proof at trial;
6. Award punitive and exemplary damages in an amount appropriate to punish or set an example of MetLife; and
7. For such other and further relief as the court may deem proper.

Dated: January 5, 2026              **ROBOOSTOFF & KALKIN**

By: */s/ Constantin V. Roboostoff*
    Constantin V. Roboostoff
    Attorneys for Plaintiff

---

Complaint for Tortious Breach of Insurance Contract